UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ROMEO S. K., :
:
    Petitioner, : Civ. No. 20-18065 (KM)
:
v. :
:
WILLIAM P. BARR, *et al.*, : **OPINION**
:
    Respondents. :
:

**KEVIN MCNULTY, U.S.D.J.**

**I.**     **INTRODUCTION**

Petitioner, Romeo S. K.,[1] is an immigration detainee currently held at the Bergen County Jail in Hackensack, New Jersey. He is proceeding through counsel with a Petition for a Writ of Habeas Corpus and Complaint for Declaratory, Injunctive, and Mandamus Relief, as well as a Motion for a Temporary Restraining Order. (DE 1; DE 8.) Respondents oppose the petition and motion. (DE 12.) Pursuant to Local Civil Rule 78.1, this matter is decided without oral argument. For the reasons set forth below, the petition is dismissed without prejudice for lack of jurisdiction, and accordingly, the motion for injunctive relief will be denied.

**I.**     **BACKGROUND**

Petitioner is a native and citizen of Liberia. (DE 12-1 at 4.) He and his family are members of the Mandingo tribe. (DE 3-2 at 1.) They previously lived on and owned land in the Ganta region of Liberia. (*Id.*) In 1990, civil war broke out, and conflict arose between the Mandingo tribe and

---

[1] Consistent with guidance regarding privacy concerns in social security and immigration cases by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Petitioner is identified herein only by his first name and last initial.

the Gio tribe, who also occupied land in the Ganta region. (*Id.*) In the wake of escalating violence against the Mandingo people, Petitioner and his family were forced to flee, leaving behind their home and land. (*Id.*) The family eventually escaped to Guinea, where they resided in refugee camps. (*Id.* at 2.) Petitioner's family still asserts ownership of the property in Ganta, but members of the Gio tribe have claimed the land as their own. (*Id.*) When members of Petitioner's family have attempted to return to their land, even as recently as 2019, they have been met with violence. (*Id.* at 3.) Petitioner's uncle was murdered, Petitioner's father was threatened with a knife and with death, and Petitioner's aunt was beaten. (*Id.*)

In 2007, Petitioner entered the United States as a Lawful Permanent Resident. (DE 12-1 at 4.) Between 2017 and 2019, however, Petitioner was convicted of several crimes. In April 2017, he was convicted of second-degree criminal possession of a forged instrument, in violation of New York Penal Law 170.25, and sentenced to three years of probation. (DE 12-2 at 10.) In September 2017, Petitioner was convicted of aggravated assault of a law enforcement officer, in violation of N.J. Stat. Ann. § 2C: 12-19(5)(A), and credit card theft, in violation of N.J. Stat. Ann. § 2C:21-6H. (*Id.* at 1.) He was sentenced to two years of probation. (*Id.*) In August 2018, Petitioner was convicted of resisting arrest and was assessed a fine. (DE 3 at 3.) In February 2019, Petition was convicted of "access device fraud or conspiracy" and sentenced to two years of probation. (*Id.* at 4.)

On August 1, 2019, Petitioner was taken into custody by Immigrations and Customs Enforcement ("ICE") and served with a Notice to Appear ("NTA") which placed him into removal proceedings. (DE 12-1 at 1–2.) The NTA charged Petitioner with violating Section 237(a)(2)(A)(ii) of the Immigration and Nationality Act ("INA") for having been "convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct."

(*Id.* at 2.) At Petitioner's first immigration hearing, the Immigration Judge ("IJ") asked Petitioner's former counsel whether Petitioner had a fear of returning to Liberia. (DE 3-9 at 5.) Petitioner's counsel responded that he did not "believe that's the pathway for relief for my client at this time." (*Id.*) Petitioner states that his former attorney never questioned him about a fear of deportation. (DE 3-5 at 1.) Instead, Petitioner's counsel sought relief in the form of cancellation of removal. (DE 3-9 at 5.) On October 21, 2019, the IJ ordered Petitioner removed from the United States. (DE 3-10 at 3.) The Board of Immigration Appeals ("BIA") subsequently affirmed the decision. (*Id.* at 5.) Thereafter, Petitioner filed a pro se petition for review with the United States Court of Appeals for the Third Circuit. *See Konneh v. Attorney General United States*, No. 20-1975, ECF No. 1 (3d Cir. May 7, 2020). Although the Third Circuit initially granted a temporary stay of removal, it vacated that order on October 6, 2020, stating that Petitioner had "failed to make a sufficiently strong showing of future merits success." (DE 12-6 at 1.) The petition for review remains pending in the Court of Appeals.

Petitioner states that in December 2019, after the IJ ordered him removed from the United States, he became the target of numerous death threats. (DE 3-2 at 4–5.) The threats, which came from individuals who currently occupy the land owned by Petitioner's family in Ganta, stated that the Gio tribe would kill or make Petitioner "disappear" if he returned to Liberia. (*Id.*) Based upon these threats, and the alleged ineffective assistance of counsel he received at his previous immigration proceedings, Petitioner filed a timely motion to reopen with the BIA on July 2, 2020. (DE 3-1.) On August 8, 2020, Petitioner also filed a motion for an emergency stay of removal. (DE 3-8 at 1.) Petitioner's emergency stay motion was denied on December 4, 2020. (DE 6-1.) The BIA concluded that "a stay of removal is not warranted." (*Id.* at 2.) Petitioner's motion to reopen, however, remains pending.

On December 4, 2020, Petitioner filed this Petition for a Writ of Habeas Corpus and Complaint for Declaratory, Injunctive, and Mandamus Relief. (DE 1.) The petition raises four causes of action stemming from the BIA's failure to adjudicate his motion to reopen. Petitioner seeks mandamus relief under 28 U.S.C. § 1361, asserting violations of the Administrative Procedures Act ("APA"), the INA, and the Due Process Clause of the Fifth Amendment. (DE 1 at 20–24.) The gravamen of Petitioner's claims is that, until the BIA adjudicates his motion to reopen, he cannot file petition for review or request a stay with the Third Circuit. Petitioner seeks relief in the form of an order directing Respondents to instruct the BIA to render a decision on Petitioner's motion to reopen and to enjoin Respondents from removing Petitioner from the District of New Jersey and the United States until the BIA renders a decision. (*Id.* 24–25.)

Petitioner also separately filed a Motion for a Temporary Restraining Order ("TRO") on December 5, 2020. (DE 8.) The TRO application stated that Petitioner was scheduled to be transferred to a staging facility in Alexandria, Louisiana on December 8, 2020, and that his removal was imminent. (DE 8-1 at 13.) The TRO sought to prohibit Respondents from transferring Petitioner out of the District of New Jersey and removing him from the United States. On December 7, 2020, the Court temporarily granted the TRO in order to hear from both parties and to make, at a minimum, a determination as to the court's jurisdiction to hear the matter. (DE 10.) Respondents have since filed their opposition to the petition and motion, and Petitioner has also filed a reply. (DE 12; DE 13.) The matter is now ripe for disposition.

## II. <u>DISCUSSION</u>

As a threshold matter, Respondents challenge the jurisdictional authority of this Court to enter a stay of removal. (DE 12 at 19.) Respondents contend that 8 U.S.C. § 1252 strips the Court over claims concerning the execution of a final order of removal. (*Id.*) Respondents specifically

4

cite to § 1252(g) and § 1252(b)(9). (*Id.*) Petitioner contends, however, that the jurisdiction stripping provisions of § 1252 are unconstitutional as applied under the Suspension and Due Process Clauses because the administrative remedies available to Petitioner are an inadequate and ineffective substitute for habeas relief. (DE 13 at 6.)

### A. Section 1252 of Title 8

Generally, a district court may exercise jurisdiction over a habeas petition, under 28 U.S.C. § 2241, when the petitioner is in custody and alleges that this custody violates the constitution, laws, or treaties of the United States. 28 U.S.C. § 2241(c); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). However, in 2005 Congress enacted the Real ID Act, which modified provisions of § 1252 to specifically remove jurisdiction under 28 U.S.C. § 2241, as well as any other sort of habeas jurisdiction. *See* Real ID Act, Pub. L. No. 109-13, § 106, 119 Stat. 231, 310–11 (2005). As amended, § 1252(g) now reads as follows:

> Except as provided in this section and notwithstanding any other provision of law *(statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title*, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g) (emphasis added). And, as amended, § 1252(b)(9) now states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this title shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, *no court shall have jurisdiction, by habeas corpus under section 2241 of title 28, United States Code, or any other habeas corpus provision, by sections 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact*.

8 U.S.C. § 1252(b)(9) (emphasis added).

As a result, the REAL ID Act, in effect, forecloses "most claims that even relate to removal" as causes of action in habeas proceedings. *Tazu v. Attorney General United States*, 975 F.3d 292, 296 (3d Cir. 2020) (quoting *E.O.H.C. v. Sec'y United States Dep't of Homeland Sec.*, 950 F.3d 177, 180, 184 (3d Cir. 2020)); *Joshua M. v. Barr*, 439 F. Supp. 3d 632, 668 (E.D. Va. 2020) (citing *Jahed v. Acri*, 468 F.3d 230, 233 (4th Cir. 2006)). Instead, these claims must be funneled into a petition for review before the appropriate Court of Appeals. *Tazu*, 975 F.3d at 299.

The Third Circuit recently ruled on the applicability of § 1252 to immigration detainees' requests for a stay of removal in *Tazu v. Attorney General United States*. The case presented issues similar to those at issue here. In *Tazu*, the petitioner was subject to a final order of removal. 975 F.3d at 294. Because the Government had difficulty in obtaining a passport for the petitioner, he was released from detention to supervised release. *Id.* The petitioner subsequently learned that he could obtain a provisional waiver and completed the first step towards obtaining one. *Id.* at 295. Before he could apply for the second step however, he was re-detained by the Government, which had secured a valid passport for him. *Id.* The petitioner thereafter filed a petition for a writ of habeas corpus and a stay of removal in the District of New Jersey, and he simultaneously filed a motion to reopen his removal proceedings before the BIA based upon ineffective assistance of counsel. *Id.* The District Court denied the petitioner's habeas action and the BIA ultimately denied his motion to reopen. *Id.* Petitioner appealed both the District Court's denial of his habeas petition and the BIA's decision on a petition for review before the Second Circuit. *Id.*

On appeal from the District Court's denial of his habeas petition, the petitioner argued that the Attorney General could not yet execute his order of removal. Rather, he argued, the Attorney

6

General was required to wait until he finished exhausting the provisional waiver process and any appeals of the denial of his motion to reopen. *Id.* at 296. The Third Circuit disagreed.

The Court of Appeals held that Tazu could not challenge the timing of his removal in a habeas petition because that would impair the Attorney General's ability to execute of an order of removal – the very sort of challenge barred by § 1252(g) and § 1252(b)(9). *Id.* at 296–97. Such a challenge, the Third Circuit held, must be raised in a petition for review before the appropriate court of appeals. *Id.* at 296, 300. Accordingly, the Third Circuit held that the District Court lacked jurisdiction under § 1252(b)(9) and § 1252(g) to even entertain petitioner's habeas petition. It reversed and remanded the matter with instructions for the District Court to dismiss the case. *Id.* at 294, 300.

Based upon the Third Circuit's ruling in *Tazu*, I must find that I lack jurisdiction under § 1252(b)(9) and § 1252(g) to review Petitioner's claims in the present case. Petitioner presents arguments which, as determined in *Tazu*, constitute a direct challenge to the Attorney General's authority to execute removal orders. I must next consider, however, whether the Suspension Clause of the U.S. Constitution in effect overrules that statutory command and requires that the court exercise some residual jurisdiction.

### B. Suspension Clause

Petitioner argues that, irrespective of § 1252(g) or § 1252(b)(9), this Court retains jurisdiction pursuant to the Suspension Clause. (DE 8-1 at 28.) Petitioner asserts that his application "occupies a jurisdictional no-man's land" because he cannot request a petition for review or a stay of removal before the Third Circuit until the BIA decides his motion to reopen. (DE 13 at 5.) Thus, he submits, the Suspension Clause comes into play because he does not have an adequate and effective means to review the legality of his removal. (DE 8-1 at 28.)

7

The Suspension Clause provides that, "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. CONST. art. I, § 9, cl. 2. If a statute is found to remove jurisdiction over a petitioner's habeas claim, the Court must then determine whether "Congress has provided adequate substitute procedures for habeas corpus." *Boumediene v. Bush*, 553 U.S. 723, 771 (2008). If such "adequate substitute procedures" are in place, the removal of habeas jurisdiction does not offend the Suspension Clause.

The Supreme Court recently analyzed the application of the Suspension Clause in the context of habeas petitions. In *Dep't of Homeland Sec. v. Thuraissigiam*, it held that where a habeas petition does not seek traditional release, the Suspension Clause does not apply. 140 S. Ct. 1959, 207 L. Ed. 2d 427 (2020).[2] The *Thuraissigiam* petitioner was apprehended shortly after crossing the border into the United States, and was placed into expedited removal proceedings. *Id.* at 1967. He requested asylum and was given a credible-fear interview. *Id.* The asylum officer determined that the petitioner lacked a "credible fear of persecution." *Id.* at 1968. A supervising officer agreed, and an immigration judge affirmed those officers' findings. *Id.* The petitioner then filed a habeas petition in federal court. In it, he argued that application of 8 U.S.C. § 1252(e)(2), which limits a federal court's review of the determination that an individual lacks credible fear of persecution,

---

[2] It is important to note that Petitioner argues *Thuraissigiam* was a plurality opinion and therefore, the only holding that is binding on this Court is a narrow finding limited to the circumstances of Mr. Thuraissigiam's case. (DE 8-1 at 32–33.) But Respondents maintain that *Thuraissigiam* was actually a majority opinion as it was authored by Justice Alito with Justices Roberts, Gorsuch, and Kavanaugh joining in and Justice Thomas authoring a concurrence which explicitly stated, "I join the Court's opinion, which correctly concludes that respondent's Suspension Clause argument fails because he does not seek a writ of habeas corpus." (DE 12 at 32 (quoting *Thuraissigiam*, 140 S. Ct. at 1983 (Thomas, J., concurring).) Justice Thomas' concurrence then elaborated on the original meaning of the Suspension Clause but did not depart from the majority's opinion or reasoning. *Thuraissigiam*, 140 S. Ct. at 1983–88 (Thomas, J., concurring). Even if the opinion was a plurality, however, it is still persuasive.

violated the Suspension Clause. *Id.* at 1966, 1968. The Court found it highly pertinent that the relief the petitioner sought was "a writ of habeas corpus, an injunction, or a writ of mandamus directing [the Department] to provide [him] a new opportunity to apply for asylum and other applicable forms of relief. … His petition made no mention of release from custody." *Id.* at 1968 (internal quotation marks and citation omitted) (alterations in original).

The relief sought was key to the Court's rejection of the petitioner's Suspension Clause argument, because "habeas is at its core a remedy for unlawful executive detention." What petitioner sought was not habeas relief as such—*i.e.,* release from illegal custody—but rather the opportunity to remain in the United States rather than be sent somewhere else. *Id.* at 1970–71. The Supreme Court held that such requests were "so far outside the 'core' of habeas" that they "may not be pursued" through a habeas petition. *Id.* at 1971. The Supreme Court further stated that there was no suggestion that "any habeas writ guaranteed by the Suspension Clause permits a petitioner to obtain relief that goes far beyond the 'core' of habeas as a 'remedy for unlawful executive detention.'" *Id.* at 1975 (quoting *Munaf v. Geren*, 553 U.S. 674, 692 (2008)). The Supreme Court also distinguished its holding from its prior decision in *INS v. St. Cyr*, 533 U.S. 289 (2001). In *St. Cyr*, the Court stated, "[b]ecause of [the Suspension] Clause, some 'judicial intervention in deportation cases' is unquestionably 'required by the Constitution.'" *Id.* at 300. But the Court was careful to explain that "this statement in *St. Cyr does not signify approval* of [the *Thuraissigiam* petitioner]'s very different attempted use of the writ, which the [*St. Cyr*] Court did not consider." *Thuraissigiam*, 140 S. Ct. at 1981 (emphasis added).

At least two Courts of Appeals have held that *Thuraissigiam* bars petitioners from invoking the Suspension Clause where they seek something other than "simple release" from unlawful detention. *See Gicharu v. Carr*, No. 19-1864, 2020 WL 7382130, at *5 (1st Cir. Dec. 16, 2020)

9

("the Suspension Clause is not implicated where, as here, the relief sought by the habeas petitioner is the opportunity to remain lawfully in the United States rather than the more traditional remedy of simple release from unlawful executive detention." (internal citation and quotation marks omitted)); *Huerta-Jimenez v. Wolf*, No. 19-55420, 2020 WL 7230778, at *1 (9th Cir. Dec. 8, 2020) (holding that Petitioners' Suspension Clause argument failed under *Thuraissigiam* where "petitioner does not want simple release but, ultimately, the opportunity to remain lawfully in the United States" because such relief fell "outside the scope of the writ") (internal citation and quotation marks omitted). Even the Third Circuit, in *Tazu,* indicated in dictum that it would accept that view; it cited *Thuraissigiam* the case and stated that "Tazu's constitutional right to habeas likely guarantees him no more than the relief he hopes to avoid—release into 'the cabin of a plane bound for [Bangladesh].'" *Tazu*, 975 F.3d at 300 (quoting *Thuraissigiam*, 140 S. Ct. at 1970, 207 L.Ed.2d 427) (alteration in original).

Based upon this precedent, I find that Petitioner's request for a stay of removal, which falls outside the core of habeas relief, does not implicate the Suspension Clause. As the District Court of Columbia recently noted, "even if *Thuraissigiam* leaves room for *some* constitutionally protected habeas claims outside the writ's historical core, it squarely rules out *this* claim as a candidate for Suspension Clause protection." *D.A.M. v. Barr*, Civ. No. 20-1321, 2020 WL 5525056, at *12 (D.D.C. Sept. 15, 2020) (emphasis in original). Accordingly, I will dismiss Petitioner's petition for a writ of habeas corpus for lack of jurisdiction.[3]

---

[3] Additionally, to the extent Petitioner seeks a writ of mandamus or asserts claims under the APA, it appears that the Third Circuit has disapproved such piggy-backing on a habeas petition. *See Burnam v. Marberry*, 313 F. App'x 455, 456 n.2 (3d Cir. 2009) (expressly stating that district court "should not have combined the habeas action and the claims under the Privacy Act and APA into a single case" and instructing that the district court should have "dismiss[ed] the habeas petition without prejudice … to focus on the alleged statutory violations, or in the alternative to have still construed the action as one of habeas corpus but to restrict its scope to the fact or duration of [the petitioner's] confinement"); *see also K.A. v. Green*, Civ. No. 17-3542, 2017 WL 5513685,

## III. CONCLUSION

For the foregoing reasons, Petitioner's Petition for a Writ of Habeas Corpus and Complaint for Declaratory, Injunctive, and Mandamus Relief (DE 1) is dismissed without prejudice for lack of jurisdiction, and the Motion for a Temporary Restraining Order (DE 8) is denied in light of the petition's dismissal. An appropriate Order follows.

DATED: December 23, 2020

/s/ Kevin McNulty

KEVIN MCNULTY
United States District Judge

---

at *3 (D.N.J. Nov. 16, 2017) (noting that "Petitioner has also filed with this Court a request for an order granting mandamus relief directing the BIA to consider his arguments for relief from removal as part of his motion to reopen his removal order prior to his being removed from the United States" but holding that "this Court has been stripped of any and all jurisdiction to consider a request for a stay or removal or to review the actions of the BIA via a writ of mandamus where the issues in question are inextricably linked to a removal order.").

11